UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CRUM & FORSTER SPECIALTY**
**INSURANCE COMPANY,**

   Plaintiff,

v.                                     No. 4:23-cv-01079-P

**LARRY SMALLWOOD, ET AL.,**

   Defendants.

## OPINION & ORDER

Before the Court is Crum & Forster Specialty Insurance Company's (Crum & Forster) Motion for Summary Judgment (Motion). ECF No. 63. Having considered the Motion, other relevant docket filings, and applicable law, the Court will **GRANT** the Motion.

## BACKGROUND

This case involves the interpretation of an insurance policy relating to an underlying wrongful death lawsuit filed in state court. On January 26, 2022, Octavio Peguero was working at a construction site in Weatherford, Texas. The general contractor for the project, Defendant I&A Development and Construction LLC (I&A), supplied a forklift for use on the property and constructed a wood box on the forklift to provide supplies to the various levels of the four-floor building. Working as an electrician on the fourth floor that day, Mr. Peguero attempted to retrieve materials from the forklift when the box tipped and caused him to fall to the ground. Mr. Peguero suffered fatal injuries from the fall.

Mr. Peguero's family brought suit in the 342nd Judicial District Court of Tarrant County, Texas (the Underlying Lawsuit). *Michelle Peguero, et al. v. I&A Development & Construction, LLC, et al.*, Cause No. 342-340963-23. The Petition in the Underlying Lawsuit alleges that Mr. Peguero's accident resulted from unsafe and inadequately supervised work conditions. The Petition further alleges that Mr.

Peguero was working in the course and scope of his employment as an electrician, and that I&A, as the general contractor, contracted for the electrical work to be completed by Defendant Larry Smallwood d/b/a Electrical Solutions (Smallwood) or Quality and Prestige Remodeling (Quality).

Policy number BAK-63499-2 (the Policy) was issued by Crum & Forster to Smallwood. However, the Pegueros settled their claims with Smallwood in the Underlying Lawsuit, and as a result, Smallwood no longer seeks defense and indemnification from Crum & Forster. Nonetheless, Crum & Forster still seeks a declaratory judgment in this case that I&A, as an "additional insured," is not entitled to any defense or indemnification from Crum & Forster in the Underlying Lawsuit.[1]

To this end, Crum & Forster filed this Motion arguing there is no genuine dispute of material fact that the Policy's "Worker Injury" exclusion precludes any duty to defend or indemnify I&A or Smallwood in the Underlying Lawsuit. Given Smallwood's settlement, the Court will only address the Motion's arguments with respect to I&A.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it might affect the outcome of a case. *Id.* Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir.

---

[1] Before settling, Smallwood filed a response to the Motion arguing that I&A is not an additional insured based on the pleadings in the Underlying Lawsuit. ECF No. 74 at 7. For purposes of this Opinion, the Court will presume I&A is an additional insured.

2013). In conducting its evaluation, the Court may rely on any admissible evidence available in the record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3). The Court need not sift through the record to find evidence in support of the nonmovant's opposition to summary judgment; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

The Motion contends that Crum & Forster has no duty to defend or indemnify I&A based on the pleadings in the Underlying Lawsuit and the plain language of the Policy. The Defendants assert, among other things, that the illusory coverage doctrine calls for imposing a duty on Crum & Forster to defend I&A. The Court will interpret the Policy using the eight-corners rule and then address the doctrine of illusory coverage.

### A. Duty to Defend or Indemnify

Crum & Forster have no duty to defend or indemnify I&A in the Underlying Lawsuit based on the Policy's unambiguous language. When an insurance carrier denies a duty to defend an insured, Texas courts evaluate the coverage based on the eight-corners rule. *See, e.g.*, *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). The eight-corners rule holds that "the duty to defend is determined by the four corners (terms) of the policy juxtaposed against the four corners (allegations) of the pleading." *Cincinnati Specialty Underwriters Ins. Co. v. F&H Constr. Co.*, No. 2:22-CV-00010, 2023 WL 2529557, at *2 (S.D. Tex. Jan. 25, 2023) (hereinafter *F&H*). Thus, "[t]he duty to defend does not depend on what the facts are, or what might be determined finally by the trier of the facts. It depends only on what the facts are alleged to be." *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 636 (Tex. 1973).

Interpreting an insurance policy is typically a question of law. *See Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 309 (5th Cir. 2010) (per curiam). Because "insurance policies are contracts," the Supreme Court of Texas has said courts "construe them using ordinary rules of contract interpretation" and the "cardinal concern is determining the

3

parties' intent as reflected in the terms of the policy itself." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009) (footnotes omitted). Courts "resolve all doubts regarding the duty to defend in favor of the duty." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).

"Worker Injury" exclusions in a policy may preclude coverage. In one Southern District of Texas case, the court granted summary judgment to an insurer with a strikingly similar policy exclusion and set of facts to this case. *See F&H*, 2023 WL 2529557. In *F&H*, a construction company purchased a policy from Cincinnati Insurance. *Id.* at *4. Tragically, and much like the facts of the Pegueros' Underlying Lawsuit, two construction workers fell on a job site while grabbing materials from a box on a forklift, leading to one death. *Id.* at *3. The policy in *F&H* contained the following exclusion to coverage:

> This insurance does not apply to:
>
> "Bodily injury" to:
>
> a. Any "contractor" or "subcontractor"; or
>
> b. Any "employee" of any "contractor" or "subcontractor" when the "bodily injury" arises out of and in the course of employment or performing duties related to the conduct of any insured business or the business of any "contractor" or "subcontractor"; or
>
> c. The spouse, child, parent, brother, or sister of any person identified above as a consequence of Paragraph a. or b.
>
> This exclusion applies whether or not the insured is sued in the capacity of employer or in any other capacity or as a result of an obligation to share damages with or repay someone else who must pay damages because of the injury.

*Id.* at *5. Cincinnati's policy also included the following definitions:

> "Contractor" and/or "Subcontractor" means a person, company or organization who agrees in any oral or written contract or agreement with any person or organization to

4

> undertake to perform work; to perform a service; or to complete a job.
>
> "Employee" under this endorsement means any person who is hired for a wage, salary, fee or other form of payment to perform work. "Employee" includes any leased worker or temporary worker, loaned worker, "volunteer worker", 1099 worker, "casual worker" or day laborer.
>
> "Casual worker" means a person, other than a person furnished . . . by a labor union, which acts at the direction of and within the scope of duties determined by any party, and for whom any party . . . does not withhold federal income taxes or pay unemployment tax.

*Id.* at *5.

Based on this exclusion, the *F&H* court found Cincinnati Insurance had no duty to defend the construction company. *Id.* at *12. The court noted that the definitions of "contractor" and "subcontractor" included "work, service, or jobs on behalf of or arising out of the insured's business." *Id.* at *11. Thus, although the pleading did not allege that the fallen workers were "employed" by the insured construction company, the court found that the policy excluded all individuals "engaged in the same construction project pertaining to F&H's business" as found in section "b" of the exclusion. *Id.*

Likewise, the plain language of the Crum & Forster Policy suggests that Mr. Peguero's injuries are excluded from coverage. The Policy in this case is similar to the policy in *F&H*. The Worker Injury exclusion found in Section A(2) provides:

> This insurance does not apply to:
>
> a. "Bodily injury" to any "employee" or "temporary worker" of any insured arising out of or in the course of:
>
>   1. Employment by any insured; or
>   2. Performing duties related to the conduct of any insured's business; or
>
> [. . .]

5

    c. "Bodily injury" to:

        1. Any contractor, subcontractor, independent contractor, or any other person; or

        2. Any "employee," "temporary worker," or "volunteer worker," or any day laborer or other person hired, engaged or retained in return for compensation or remuneration of any kind, working for, such contractor, subcontractor, independent contractor or any other person, arising out of or in the course of performing work or rendering services of any kind or nature whatsoever:

            a) For or on behalf of any insured; or

            b) For which the insured may become liable in any capacity; or

    d. Any obligation to contribute to, share damages with, repay or indemnify someone else who must pay damages because of such "bodily injury."

ECF No. 64, Ex. D: 000087–88. Pertinent to this case, the exclusion precludes coverage for (1) injuries to employees of the insured, A(2)(a), (2) injuries to contractors, subcontractors, or independent contractors, A(2)(c)(1), and (3) injuries to employees or workers hired by those contractors to perform work on behalf of the insured, A(2)(c)(2).

    The Court must first determine the nature of Mr. Peguero's work based on the four corners of the pleadings in the Underlying Lawsuit. The pleadings allege that I&A, as the general contractor, "contracted for the electrical work to be completed by [Smallwood] or [Quality]." ECF No. 64, Ex. B ¶ 14. The pleadings also make clear that Mr. Peguero's accident occurred while "working in the course and scope of his employment as an electrician." *Id.* Based on these pleadings, there are three possibilities as to Mr. Peguero's status: (1) Mr. Peguero was employed by Smallwood to complete the electrical work; (2) Mr. Peguero was employed by Quality to complete the electrical work; or (3) Mr.

Peguero was hired by Smallwood or Quality to complete the electrical work as an independent contractor.

Now turning to the four corners of the Policy, under any of the three possibilities presented by the pleadings in the Underlying Lawsuit, Mr. Peguero's accident would be excluded. *First*, if Mr. Peguero was employed by Smallwood, Section A(2)(a) would apply because Mr. Peguero was an employee of an insured (Smallwood). *Second*, if Mr. Peguero was employed by Quality, Section A(2)(c)(2) would apply because Mr. Peguero was an "employee" of a "subcontractor" (Quality) "performing work . . . on behalf of an[] insured" (I&A or Smallwood). And *third*, if Mr. Peguero was not "employed" by either Smallwood or Quality, and was instead hired as a contractor himself, Section A(2)(c)(1) would apply because Mr. Peguero was still hired as a "independent contractor" to "perform[] work . . . on behalf of any insured" (I&A as the general contractor over Smallwood and Quality, or Smallwood itself).[2] Thus, relying on the eight-corners rule, the Policy excludes Mr. Peguero's injury. And despite resolving all doubts in favor of I&A and the duty to defend, the Court finds that the Crum & Forster is not obligated to defend I&A in the Underlying Lawsuit based on the Worker Injury exclusion in the Policy.

As in *F&H*, the Court also finds that Crum & Forster has no duty to indemnify I&A. Typically, Texas law "reserves determination of the duty to indemnify until the conclusion of the underlying litigation." *F&H*, 2023 WL 2529557, at *11. But when "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify," a court may rule on both at once. *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668-69 (5th Cir. 2015) (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (per curiam)). Because the Worker Injury exclusion precludes coverage

---

[2]Even if, as alleged by Smallwood in its response, I&A is not an insured based on the pleadings below, Mr. Peguero would still be employed by a contractor, subcontractor, or independent contractor "for which the insured may become liable." *See F&H*, 2023 WL 2529557, at *5–6 (recognizing that when the precise nature of an injured worker's employment relationship is not specified, the court may make appropriate inferences consistent with the allegations of liability).

7

for Mr. Peguero's accident, this Court finds Crum & Forster is not required to defend or indemnify I&A.

### B. Illusory Coverage Doctrine

Furthermore, the Policy is not so broad that it renders coverage illusory. Under the illusory coverage doctrine, interpretation of a policy's exclusion should not render any portion of the policy meaningless. *See ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2005) (per curiam). A policy is not illusory "if there is coverage under other circumstances than those present in the case being litigated." *Cont'l Cas. Co. v. Am. Safety Cas. Ins. Co.*, 365 S.W.3d 165, 172 (Tex. App.—Houston [14th Dist.], 2012, pet. denied) (citations omitted).

*F&H* again serves as a valuable analogue to this case. In *F&H*, Cincinnati Insurance argued that, with a different set of circumstances, the Cincinnati Insurance policy would serve to cover bodily injuries to others such as pedestrians, residents and tenants, and motorists. *See F&H*, 2023 WL 2529557, at *8. There, the court found that the policy's exclusion "reasonably restrict[ed] the broad bodily injury coverage [of] injuries to persons who are not engaged in the . . . construction project . . . ." *Id.* at *11.

The same is true here: Crum & Forster's construction of the Policy does not render coverage illusory because other circumstances than those at play here would trigger coverage. Crum & Forster's construction gives effect to the intent of the Parties in contracting by covering injuries to non-workers but excluding injuries to those performing work or rendering services on behalf of any insured.

The Court is unpersuaded by Smallwood's contention that the broad exclusion of bodily injuries to "[a]ny contractor, subcontractor, independent contractor, or any other person" in Section A(2)(c)(1) is the Policy's "downfall." ECF No. 74 at 8. True, the Policy could be read as though the individuals excluded in A(2)(c)(1) are not limited by the same qualifications in A(2)(c)(2). In other words, that the bodily injury to "any other person," for example, does not need to be a person performing work on behalf of an insured. If that were the proper reading, then Smallwood

8

would be correct that Section A(2)(c)(1) "entirely negates <u>any</u> coverage for bodily injury under the Policy" and the exclusion would be invalidated under the illusory coverage doctrine. *Id.* at 10. But that reading drops context. Reading the section as a whole makes clear that both A(2)(c)(1) and A(2)(c)(2) are only excluding bodily injuries of persons doing some kind of work for an insured. Without such constraints, the Policy would be not only overly technical but actually nonsensical, as it would extend the exclusion to "any person" in the world, whether related to their work on the project or not, making the more specific exclusions meaningless.

Thus, Crum & Forster's interpretation of the Policy does not implicate the illusory coverage doctrine. The exclusion stands, and Mr. Peguero's claim is not covered.

## CONCLUSION

For the reasons set out above, the Court **GRANTS** the Motion and **ENTERS** summary judgment in favor of Crum & Forster. Accordingly, Crum & Forster owes no duty to defend or indemnify I&A in the Underlying Lawsuit.

**SO ORDERED** on this **9th day of June 2025.**

_____
**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE